**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
_____

**JOHN GREUEL,**

    **Plaintiff,**

    v.                                                                              Case No. 07-C-661

**MICHAEL J. ASTRUE,**
Commissioner, Social Security Administration,

    **Defendant.**
_____

# DECISION AND ORDER

## NATURE OF CASE

The plaintiff, John Greuel ("Greuel"), commenced this action on July 19, 2007, seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), pursuant to 42 U.S.C. § 405(g), denying his applications for disability insurance benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. Greuel's appeal will be addressed herein.

## PROCEDURAL HISTORY

Greuel filed applications for disability insurance benefits and SSI in 2004, alleging disability due to hip and knee impairments. Greuel's application was denied initially and upon reconsideration. Thereafter, pursuant to Greuel's request, a hearing was conducted before an Administrative Law Judge ("ALJ"). Greuel, who was represented by counsel,

appeared at the November 2, 2006, hearing and testified. A vocational expert also testified at the hearing.

In a March 9, 2007, Decision, the ALJ determined that Greuel has the severe impairments of degenerative joint disease left hip and right knee, obesity and status post left knee stress fracture but that these severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"). (Tr. 20.) The ALJ found that Greuel retained the residual functional capacity to perform a significant range of sedentary work activity with no climbing ropes, scaffolds or ladders and only occasionally climbing of stairs. (Tr. 21.) The ALJ further found that Greuel could perform a significant number of jobs that exist in the national economy such as security monitor, production worker, hand packing and packaging and inspection. (Tr. 26.) Therefore, the ALJ concluded that Greuel was not under a "disability" as defined in the Social Security Act. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Greuel's request for review. (Tr. 4.)

## STATEMENT OF THE FACTS

At the time of the ALJ's decision, Greuel was 41 years old. (Tr. 25.) Greuel has a high school education but stated that he has a learning disability and has difficulty with "big words." (Tr. 166, 186-87.) Greuel previously worked part-time at Subway, as a security monitor and in a factory. (Tr. 167-68.)

Greuel's medical records reveal a history of hip pain since 2002, which was diagnosed as avascular necrosis of the left femoral head. (Tr. 112.) He was given a cane for ambulation and placed on ibuprofen.[1] (Tr. 112.) In September 2004, Greuel was examined by Dr. David Dewitt ("Dewitt"). Dewitt noted that Greuel was able to sit with normal upright posture and arose to a standing position without difficulty. (Tr. 110.) He found that Greuel had a "heel-toe pattern of gait which is antalgic with lurch to the left," could squat 45 degrees, rise with mild difficulty and pain in the left hip, and demonstrated some limitation in left hip flexion, but had normal range of motion in his knee and ankle. (Tr. 110.) Greuel's knees were stable and he demonstrated full (5/5) motor strength in all muscles of his lower extremities. (Tr. 110.) He had intact sensation and no reflex abnormalities. (Tr. 110.)

Dewitt noted that the x-rays of the left hip showed some flattening of the femoral head and some osteophyte[2] development. (Tr. 110.) Dewitt recommended conservative treatment measures such as stretching and strengthening, cortisone injections, and anti-inflammatory medications. (Tr. 111.) He opined that Greuel could perform sedentary-type work, and advised him to avoid prolonged walking, standing, squatting, lifting, and repetitive stair climbing. (Tr. 111.)

In January 2005, Greuel requested a reconsideration of the disability determination. The medical evidence of record was examined by Dr. Ricardo Almonte ("Almonte"), a state agency physician. Almonte determined that Greuel had left hip

---

[1] Ibuprofen is a "nonsteroidal analgesic and anti-inflammatory agent derived from propionic acid." *Stedman's Medical Dictionary* 942 (28th ed. 2006).

[2] Osteophyte is a "bony outgrowth or protuberance." *Stedman's* at 1391.

osteoarthritis[3] with a secondary diagnosis of obesity (Tr. 29.) Almonte also concluded that Greuel was not disabled.[4]

In January 2006, internist Christopher Withers, D.O. ("Withers"), examined Greuel for back problems, knee pain and hip pain. (Tr. 134.) In February 2006, Withers reported that he was treating Greuel for severe degenerative joint disease of the right knee, and to a limited extent of the left knee and hip, substantiated by radiographic imaging. (Tr. 131.) Withers opined that Greuel was unable to perform work activity that required prolonged standing for more than two hours. (Tr. 131.)

In April 2006, Withers reported that Greuel returned with complaints of right knee and left hip pain. (Tr. 151.) Right knee x-rays showed stress fractures that were the cause of the pain. (Tr. 151.) Greuel had been walking with a cane and Withers noted no neurological deficits. (Tr. 151.) Withers prescribed Vicodin for the knee pain. (Tr. 151.)

In May 2006, Withers issued a note restricting Greuel from bearing weight or working "until further notice" because Greuel's stress fractures were causing additional pain. (Tr. 130.) In August 2006, Withers reported that Greuel was taking only a half-tablet of Vicodin every 12 hours, which was enough to decrease his pain from a six to a two on a scale

---

[3]Osteoarthritis is defined as follows: "*This word is a misnomer in that the dominant pathologic process is degeneration rather than inflammation.* Arthritis characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes; pain and loss of function result; mainly affects weight-bearing joints, is more common in old people and animals." *Stedman's* at 1388.

[4]Prior to this state agency evaluation, on October 13, 2004, state agency physician M. J. Baumblatt ("Baumblatt"), reviewed the medical evidence of record and diagnosed Greuel with "osteoarthrosis and allied disorders" and a secondary diagnosis of obesity. Baumblatt determined that Greuel was not disabled. (Tr. 28.)

4

of one to ten. (Tr. 150.) Greuel denied any side effects from the Vicodin. Withers reported no abnormal findings. (Tr. 150.)

In November 2006, Withers completed a questionnaire in which he reported diagnoses of back pain, bilateral hip pain, and bilateral knee pain. (Tr. 134.) Withers reported that clinical findings showed joint crepitus[5] in both knees. He also reported decreased range of motion with regard to hip flex/extension as well as side bending to the left or right. (Tr. 134.) He opined that the precipitating factors for pain were prolonged sitting and standing and that Greuel could not alleviate the pain with medication without suffering from the medication's side effects. (Tr. 136.)

Withers further opined that Greuel could not sit for more than one hour in an eight-hour day or stand/walk for more than one hour in an eight-hour day. He recommended that Greuel rise and move around every 15 minutes and that Greuel should not lift or carry any weight. Greuel should also avoid reaching, handling or lifting. Withers reported that Greuel had markedly limited ability to grasp, turn, or twist objects and was moderately limited in using his fingers or hands for fine manipulation and in using his arms for reaching. Withers reported that Greuel was taking 7.5 mg. of Vicodin three times daily and experienced dizziness and fatigue. He further reported Greuel's pain level as an eight on a scale from one to ten. Withers opined that due to "chronic pain," Greuel was unable to tolerate moderate or severe stress, but could handle low stress. He concluded that Greuel could not push, pull, kneel, bend, or stoop. (Tr. 134-40.)

---

[5]Crepitus is defined as "the grating of a joint, often in association with osteoarthritis." *Stedman's* at 457.

5

At the hearing, Greuel testified that since April, 2004 – the alleged onset date of his disability – he had worked for about one month in 2005 at a Subway restaurant, but that he could not stand for eight hours at the counter. (Tr. 167.) Greuel also tried to perform part-time security work in 2005, but lost that job after a few months because he lacked a driver's license. (Tr. 168.)

Due in part to his lack of employment, Greuel testified that he did not have medical insurance from 2002 to 2006 and, therefore, he did not seek medical treatment – including a recommended hip replacement surgery. (Tr. 175, 179.) Consequently, Gruel was unable to sit for prolonged periods as his legs would become numb and spasm. Greuel stated that Withers prescribed Vicodin for pain relief. (Tr. 179-80.) In addition to his medication, Greuel also used a cane, performed leg exercises to improve his circulation, but stated that he could still only walk one and a half blocks before needing to sit down. (Tr. 183.)

As for daily activities, Greuel reported in September 2004, that he took his dogs outside a few times per day, showered, performed some housework, prepared meals, washed laundry, left the house two to three times weekly, rode the bus, and shopped for groceries. He also reported walking up to two hours daily in half-hour increments, and an ability to lift up to twenty pounds. (Tr. 75-78.)

**APPLICABLE LAW**

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental impairments prevent him from doing not only his previous work, but any other substantial gainful employment which exists in the national economy considering his age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is so disabled, the ALJ is required to evaluate in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether his impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"), which the Commissioner acknowledges to be conclusively disabling; (4) whether the claimant possesses the residual functional capacity to perform his past relevant work; and (5) whether the claimant is capable of performing any other work existing in significant numbers in the national economy given his age, education, and work experience. *See Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *Wolfe v. Shalala*, 997 F.2d 321, 322-23 (7th Cir. 1993). If a claimant satisfies steps one, two and three, he will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then he must demonstrate that he lacks the residual functional capacity to perform his past work. The claimant bears the burden at steps one through four. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Once step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. *Id.* at 352; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Knight*, 55 F.3d

7

at 313. The process is sequential and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

Review of the Commissioner's decision is limited. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the finding of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford*, 227 F.3d at 869. Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007) ("Substantial evidence must be more than a scintilla but may be less than a preponderance.") (citation omitted).

This Court reviews the entire administrative record but does not reconsider facts, reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869. Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, even if substantial evidence supports the Commissioner's

8

findings, this Court may reverse if the ALJ committed an error of law. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

## ANALYSIS

In this case, the ALJ conducted the standard five-step evaluation to determine whether Greuel is disabled and denied Greuel's claim at step five. On appeal, Greuel asserts several challenges to the ALJ's decision. First, Greuel asserts that the ALJ did not properly evaluate or discuss his impairments at step three. Greuel contends that the ALJ failed to mention the specific listings she considered, in particular Listings § 1.02 and § 1.06, and failed to obtain a medical consultant or state agency physician's opinion on medical equivalence.

The Listings specify criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may demonstrate presumptive disability by showing either that he meets the requirements as outlined by the specific Listing, or that his impairment is accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). "To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). If the ALJ fails to identify the listing at issue, combined with a perfunctory analysis, the ALJ's decision may require a remand. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The ALJ must set forth some analysis in her decision, but the

law does not necessitate reversal and remand if the ALJ merely fails to explicitly refer to the relevant listing. *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004).

Greuel contends that the ALJ failed to properly consider Listing §1.02 and §1.06. Listing §1.02, which relates to a "*[m]ajor dysfunction of a joint(s) (due to any cause)*" states:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

Listing §1.06 provides for:

> *Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones.* With:
> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

*Id.* at § 1.06.

An "[i]nability to ambulate effectively means an extreme limitation of the ability to walk." *Id.* at § 1.00(B)(2)(b)(1). Examples of an inability to ambulate effectively include the inability to walk without the use of a walker, two crutches or two canes; to use

standard public transportation; or to carry out routine daily activities, such as shopping. *Id.* at § 1.00(B)(2)(b)(2).

In this case, the ALJ did not identify which listings she analyzed. This failure, however, does not necessitate a remand. *Rice*, 384 F.3d at 369-70. The ALJ stated, "[a]s more fully explained below, the record did not demonstrate the requisite level of neurological, or other findings to meet to [sic] equal the musculoskeletal listings, whether considered singly or in combination with other impairments." (Tr. 21.)

Greuel bears the burden of proving, among other things, that he is unable to ambulate effectively as required by both Listings at issue. Although the ALJ did not explicitly state that Greuel could ambulate effectively, the ALJ noted that Greuel used a cane, as opposed to two canes, to ambulate. (Tr. 21.) Moreover, the ALJ discussed that "[t]here is no record that a cane was actually prescribed or that any doctor reported that it was medically necessary." (Tr. 23.) The ALJ noted that the Greuel's daily activities included cooking and cleaning, occasional fishing, driving and getting together with friends. (Tr. 23.) Greuel also reported shopping for groceries, doing yard work, and taking his dogs out a few times daily. (Tr. 75-8.) Greuel was able to take public transportation to the hearing before the ALJ. (Tr. 165.)

The evidence does not demonstrate to the Court an "extreme limitation of the ability to walk" as required by the Listing. 20 C.F.R. Pt. 404, Subpt. P, App 1, § 1.00(B)(2)(b)(1). The ALJ concluded that Greuel's impairments do not meet or medically equal one of the listed impairments in the Listings. The Court agrees and is not persuaded

that it should disturb the ALJ's findings at step three because the ALJ failed to specify the specific listings she considered and rejected. *See Scheck*, 357 F.3d at 700 (where there was no evidence that a claimant met or equaled a listed impairment, minimal articulation by ALJ regarding finding at step three was sufficient). Moreover, no further development of the medical record was required because Greuel failed to show, on the basis of the medical evidence alone, that his impairments are equal in severity and duration to the symptoms required under the Listing. 20 C.F.R. § 404.1526(a).

Greuel next contends that the ALJ failed to accord controlling weight to the opinions of Withers. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); 20 C.F.R.§ 404.1527(d)(2). However, "while the treating physician's opinion is important, it is not the final word on a claimant's disability . . . [as a] patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted).[6]

A decision to deny a physician's opinion controlling weight does not prevent the ALJ from considering that opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

---

[6] *See also Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (discussing the treating physician rule and stating that while a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant, "the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits . . . ) will often bend over backwards to assist a patient in obtaining benefits," and, therefore, "the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." (internal citations omitted)).

Rather, the amount of weight the ALJ affords depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue. 20 C.F.R. § 404.1527(d)(2)-(5); *see also Hofslien*, 439 F.3d at 377. Consequently, an ALJ may discount a treating physician's medical opinion if the opinion "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Skarbek*, 390 F.3d at 503 (internal quotations and citations omitted).

In this case, Greuel contends that Withers' opinions were entitled to more weight than they were credited, and consequently, the ALJ committed error. At issue are three opinions of Withers. (Tr. 131, 130 and 134-40.) The first opinion is found in the "to whom it may concern" letter dated February 3, 2006, wherein Withers opined that Greuel is unable to perform work activity that requires standing more than two hours. (Tr. 131.) Greuel does not contend that the ALJ committed error with regard to this letter as the ALJ noted that the opinion was "entirely consistent with the above described residual functional capacity for sedentary work." (Tr. 24.) Instead, Greuel contends that error was committed with regards to the second and third opinions.

In the second opinion, dated May 26, 2006, Withers explained that he was treating Greuel for severe right knee pain and that an x-ray had confirmed the presence of a stress line fracture of the distal femur and proximal tibia which was the most likely source

of the pain. (Tr. 130.) As a result of this fracture, Withers noted that Greuel should not bear weight or work until further notice. (Tr. 130.) The ALJ rejected this statement noting that "[t]his opinion by itself does not constitute an opinion of permanent disability and in any event is not supported by any specific clinical or laboratory findings." (Tr. 24.) Thus, the ALJ declined to accord significant weight to this opinion, reasoning that the opinion failed to be supported by any required specific findings. See 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

As for the third opinion dated November 15, 2006, (Tr. 134-41), the ALJ rejected this opinion reasoning:

> [I]t is inconsistent with Dr. Witters' [sic] earlier opinion, unsupported by Dr. Witters' [sic] own treatment records showing benign findings, and inconsistent with the other evidence of record uniformly showing normal clinical findings and mild to moderate. Moreover, Dr. Witters [sic] has only had a brief infrequent treatment history with the claimant, having seen the claimant on only a few occasions as the record contains only two progress notes from him. He pointed to very little in the way of objective findings, noting only that x-rays showed stress fracture in the claimant's knees and degenerative joint disease in the claimant's hip, and that the claimant had joint crepitus and decreased range of motion in his knees and hips. Dr. Witters [sic] does not, however, explain the extreme limitations contained in his opinion. For instance, Dr. Witters [sic] does not describe any findings, or even a diagnosis, to explain his opinion that the applicant had marked limitations in the use of his hands, nor any specific findings to explain his opinions that the applicant was unable to sit for even one hour, or would have excessive absenteeism. Dr. Witter's [sic] statement about the claimant's pain level of 8/10 was actually contradicted by Dr.

14

> Witter's [sic] own progress note indicating that the claimant told
> him his pain was at 6/10 when he did not use his medications
> and was only at a 2/10 when he did use the medications.

(Tr. 24.) The ALJ concluded that "Witters [sic] essentially opined that the claimant could not sustain even sedentary work activities on a full time basis." (Tr. 24.)

In this case, the ALJ provided a detailed explanation for discounting this opinion. In particular, the ALJ noted internal inconsistencies as well as contradictions within the medical records submitted by Withers and discussed that there were no findings to support the restrictions relating to Greuel's use of fingers and hands, ability to sit or excessive absenteeism. The ALJ also discussed that Withers' limitations were not consistent with the findings of Dewitt who determined that Greuel could perform sedentary work activity. The ALJ built the requisite "accurate and logical bridge" from the evidence to her conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The Court concludes that the ALJ's conclusion regarding the November, 2006, opinion is supported by an adequate explanation and is reasonable.

The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart,* 331 F.3d 565, 568 (7th Cir. 2003). "Under this standard, the ALJ's decision, if supported by substantial evidence, will be upheld, even if an alternative

position is also supported by substantial evidence." *Scheck*, 357 F.3d at 699 citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

In sum, the ALJ adequately articulated her reasons for discounting the medical opinions of Withers. The Court concludes that there is substantial evidence in the record provided by the state agency physicians as well as Greuel's treating physician to suppport the ALJ's conclusions regarding Greuel's residual functional capacity.

Greuel's next argues that the ALJ failed to make a proper credibility determination. The ALJ's credibility determination is entitled to special deference because the ALJ is in the "best position to see and hear the witnesses and assess their forthrightness." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Accordingly, an ALJ's credibility determination will not be disturbed unless the plaintiff can show that it was patently wrong. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Under Social Security Ruling ("SSR") 96-7p there are seven factors to be considered when determining an individual's credibility:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. ALJ must "*specify* the reasons for his finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony." *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003).

> The ALJ stated as follows:
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 21.) The ALJ further discussed that "the record as a whole does not fully support the claimant's subjective allegations about the disabling nature of his impairments to the extent they are inconsistent" with the ability to perform sedentary work activity. (Tr. 25.) The ALJ noted the findings of the consultative examination of Dewitt who opined that Greuel was capable of performing sedentary work. (Tr. 110-11.) The ALJ discussed the findings of Withers in 2006. The ALJ noted that in February 3, 2006, Withers opined that Greuel was unable to perform work activity that required prolonged standing more than two hours. (Tr. 131.) In April, 2006, the ALJ noted that Withers reported benign findings and specifically reported that there were no focal deficits. (Tr. 151.) In August, 2006, the ALJ noted that Withers reported no significant abnormalities on examination and that Greuel was using only ½ tablet of Vicodin every twelve hours and that the dosage and duration were enough to eliminate the pain. (Tr. 150.) The ALJ concluded that "the record does not contain any significant neurological or other abnormalities" and that the "objective record fails to fully corroborate the severity and intensity of claimant's allegations of disabling hip pain and other

17

limitations." (Tr. 23.) The ALJ also considered other factors, in addition to the objective evidence, including Greuel's statements regarding his limitations, Greuel's medications and Greuel's daily activities which included cooking, cleaning, occasional fishing, driving and getting together with friends. (Tr. 23.)

In this case, the ALJ provided specific reasons for her credibility finding. The ALJ adequately considered the relevant factors in making her credibility determination and based her determination upon the objective evidence. The Court concludes that the ALJ's credibility assessment is not patently wrong, and moreover, is supported by the evidence in the record. Therefore, it must be upheld. *See Powers*, 207 F.3d at 435.

Greuel's final challenge to the ALJ's decision is that the ALJ failed to properly evaluate his learning disability. Greuel argues that his inability to pronounce large words, recite his work history and insurance coverage, his misspelling of words, and referring to his doctor by the wrong name justifies an inquiry into a mental impairment. The ALJ noted that the record contained no documentation of a learning disability or any other mental impairment. (Tr. 20.)

A claimant is responsible for providing medical evidence of a mental impairment. *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991). Although such claims may be raised at the hearing, they must be supported by objective evidence. *See Id.* ("Once a claimant has presented evidence that he suffers from a mental impairment, the Secretary is required to complete a standard document."). The ALJ did not err in not ordering a consultative examination. Greuel fails on his final argument because he did not present any

18

objective evidence regarding a mental impairment and the objective medical evidence is silent with regard to a learning disability. Moreover, Greuel testified that his "learning disability" does not interfere with his ability to work. (Tr. 187.)

In conclusion, the ALJ properly evaluated the evidence in the record and adequately articulated her reasons for denying Greuel's claim for disability benefits. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Greuel was not disabled and was not entitled to disability benefits. Therefore, Greuel's appeal is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Greuel's appeal from the Commissioner's final decision denying his 2004 applications for disability insurance benefits and SSI is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly**.**

Dated at Milwaukee, Wisconsin this 16th day of September, 2008.

                                        **BY THE COURT:**

                                        *s/ Rudolph T. Randa*
                                        *HON. RUDOLPH T. RANDA*
                                        *Chief Judge*